IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JEREMY WAYNE JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    1:14CV562 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Jeremy Wayne Johnson ("Plaintiff") brought this action pursuant to Sections

205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g)

and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social

Security denying his claims for Disability Insurance Benefits and Supplemental Security

Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-

motions for judgment, and the administrative record has been certified to the Court for

review.

I.     PROCEDURAL HISTORY

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security

Income Benefits on October 13, 2010, alleging a disability onset date of October 1, 2007.

(Tr. at 177-94.)[1]   His applications were denied initially (Tr. at 72-95) and upon

reconsideration (Tr. at 96-121). Thereafter, Plaintiff requested an administrative hearing de

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #8].

novo before an Administrative Law Judge ("ALJ"). (Tr. at 148-49.) Plaintiff attended the subsequent hearing on December 4, 2012, along with his attorney and an impartial vocational expert. (Tr. at 13.)

The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. at 23.) On May 2, 2014, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-6.)

## II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted).

2

"If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC,

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to

the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III.    DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from two severe impairments: mood disorders and obesity. (Tr. at 15.) The ALJ found at step three that neither of these impairments met or equaled a disability listing. (Tr. at 16.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform medium work "except that [he] is only capable of simple work-related decisions with few workplace changes; he may not work at a fixed production rate or pace; [he] is precluded

---

be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

from interaction with the general public and may have only occasional interaction with co-workers and supervisors; and [he] is only capable of concentrating for 2 hours, and then must take a 15 minute break." (Tr. at 17-18.) Based on this determination, the ALJ found under step four of the analysis that Plaintiff could not return to any of his past relevant work. However, based on the vocational expert's testimony, the ALJ determined at step five, that, given Plaintiff's age, education, work experience, and RFC, he could perform other jobs available in the national economy. (Tr. at 22.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 23.)

Plaintiff now contends that the ALJ erred at steps three and five of the sequential analysis. In particular, he argues (1) that substantial evidence fails to support the ALJ's finding that Plaintiff did not meet 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04 ("Listing 12.04"), and (2) that the vocational expert "relied on an incomplete hypothetical when he concluded there were a substantial amount of jobs available" for Plaintiff. (Pl.'s Br. [Doc. #11] at 2, 9.)

A.      Listing 12.04

Plaintiff first contends that the ALJ's determination that Plaintiff does not meet Listing 12.04 is not based on substantial evidence. Listing 12.04 encompasses affective disorders, including depressive, manic, and bipolar syndromes, and may be met in one of two ways. Most commonly, a claimant first must manifest certain "paragraph A" criteria, i.e., specific symptoms set out in the listing itself. These criteria, in turn, must result in at least two of the following "paragraph B" criteria:

1.      Marked restriction of activities of daily living; or
2.      Marked difficulties in maintaining social functioning; or

6

3.   Marked difficulties in maintaining concentration, persistence, or pace; or

4.   Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.04(B).  In other words, a claimant must meet both paragraphs A and B.  Alternatively, a claimant may meet the criteria of 12.04(C) alone.

In the present case, the ALJ found that Plaintiff did not meet the paragraph C requirements of the listing, and Plaintiff does not challenge that finding here.  However, Plaintiff argues that substantial evidence fails to support the ALJ's findings as to paragraph B.  Specifically, Plaintiff contends that the ALJ "incorrectly concluded" that he had only moderate, rather than marked, difficulties in both maintaining concentration, persistence, or pace and maintaining social functioning.  The Court addresses each of these contentions in turn. [4]

1.   Concentration, persistence, or pace

Plaintiff argues that "[t]he ALJ incorrectly concluded [that Plaintiff] only suffers from moderate difficulties maintaining concentration, persistence, or pace because he based his determination largely on the fact that [Plaintiff] testified he could play video games and do some household chores."  (Pl.'s Br. at 3 (citing Tr. at 17).)  Plaintiff likens his case to Munns v. Astrue, No. 5:11-cv-00393-SB, 2012 WL 3264999, at *8 (D.S.C. August 10, 2012), in which the court "determined that the Plaintiff's enrollment in one online class and his

_____

[4] In this case, the parties do not address the paragraph A criteria, nor does the ALJ's decision address this issue.  Instead, both parties focus solely on whether Plaintiff satisfies the paragraph B criteria.  (Tr. at 16-17; Pl.'s Br. at 2-7; Def.'s Br. [Doc. #15] at 6-11.)  Although a claimant must prove that he "meet[s] all of the specified medical criteria," in order to meet a listing, Sullivan v. Zebley, 493 U.S. 521, 530 (1990), the Court must nevertheless review the ALJ's findings solely upon the grounds which they were made, which, in this case, is limited to paragraph B considerations, see generally **Error! Main Document Only.**SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) (holding that courts must review administrative decisions on the grounds upon which the record discloses the action was based).

7

testimony that he could play video games, without more, was not the type of substantial basis needed to determine that the Plaintiff only had mild difficulties of concentration, persistence, or pace." Significantly, the Munns court noted three bases for remand at step three of the sequential analysis: (1) "there [was] no evidence to demonstrate whether the Plaintiff successfully engaged in these activities," (2) "there [was] medical evidence (including the opinions of treating sources) that the Plaintiff had marked difficulties in maintaining concentration, persistence, and pace," and (3) the opinions of the two non-examining State agency physicians, when viewed in the context of the record as a whole, did not provide substantial evidence to support the Commissioner's finding at step three, given that they were contradicted by all of the other medical evidence in the record. Id. at *9. None of these factors apply in the present case.

Most notably, in evaluating Plaintiff's concentration, persistence, and pace under the Listing, with respect to the medical evidence in the record in this case, the ALJ specifically relied on the conclusion of Dr. Lucas, a psychological consultative examiner, that Plaintiff's "memory was intact, his attention was easily gained and held, and that his judgment and insight were good." (Tr. at 17, 360-61.) In subsequently evaluating Plaintiff's RFC, the ALJ further noted that Dr. Lucas found that Plaintiff could "understand, retain, and follow instructions, [and] perform simple, repetitive [,] routine tasks." (Tr. at 20.) Dr. Lucas' mental status evaluation supports these conclusions (Tr. at 360-61.) The ALJ gave significant weight to these findings. The ALJ also noted that Dr. Lucas' evaluation further reflected that Plaintiff "had intact memory for recent and remote events, that his attention was easily gained, held and directed, and that his judgment and insight were good." (Tr. at 20.)

8

Although Plaintiff points to other evidence regarding his mental condition generally, the ALJ considered that evidence (Tr. at 18-19) and found that Plaintiff suffered from moderate limitations in concentration, persistence or pace. Thus, the medical evidence in the record provides support for the ALJ's conclusion.

In addition, in evaluating Plaintiff's concentration, persistence, and pace, the ALJ noted Plaintiff's ability to perform basic household chores (Tr. at 17), and later noted Plaintiff's ability to perform multiple activities "that require some degree of concentration, including laundry, simple cooking, washing dishes, paying bills, and counting change." (Tr. at 20.) The ALJ also noted that Plaintiff testified that he lives by himself and maintains his own household, and that he is able to "play games." (Tr. at 20.) In this regard, Plaintiff testified that he spends approximately four to five hours playing video games, including Lord of Warcraft, Mario Kart, and solitaire, in the course of an average day. (Tr. at 41, 48.) Although Plaintiff testified that he continues to have panic attacks three to four times a week which may require him to suspend his play (Tr. at 43-44), this testimony is inconsistent with his most recent medical records. (Tr. at 20 (citing Tr. at 386, 390, 392)). Specifically, Plaintiff reported to Dr. Collins, his treating psychiatrist, on November 28, 2011 that "the increase in medicine has done away with panic attack[s,] and he feels he is getting along okay." (Tr. at 20, 392.) Four months later, on March 26, 2012, Plaintiff again stated that his "current treatment is sufficient to control panic attack[s.]" (Tr. at 20, 390.) A second treating psychiatrist, Dr. Dekle, similarly noted on July 23, 2012 that Plaintiff's medications effectively controlled his symptoms. (Tr. at 20, 386.) No record evidence refutes this improvement in Plaintiff's anxiety level.

Accordingly, substantial evidence supports the ALJ's step three determination that Plaintiff experienced moderate, rather than marked, limitations in concentration, persistence, or pace.

### 2. Social functioning

Plaintiff next contends that substantial evidence fails to support the ALJ's determination that he suffered from only moderate limitations in social functioning. In his briefing, Plaintiff highlights his testimony, along with the testimony offered by his mother, indicating significant social impairment. Plaintiff testified that, due to his anxiety and panic attack disorder, he felt scared in crowds and "being out in public in general." (Tr. at 35, 38.) He also "had a hard time dealing with just being around coworkers." (Tr. at 35.) Plaintiff, along with his mother, testified that he experienced social problems in school, and that he moved to his own apartment following altercations with his siblings and father. (Tr. at 19, 50-52, 57.) With respect to his past employment, Plaintiff testified that his occasional coworker interactions were stressful, and that the combined stresses of workplace demands and social interaction caused him to experience panic attacks in his previous job. (Tr. at 35-37.)

However, the ALJ found Plaintiff's testimony as to the severity of his symptoms less than credible, a finding which Plaintiff does not contest. (Tr. at 20.) In addition, as noted above, the ALJ supportably concluded that Plaintiff's panic attacks were well controlled by medication as of late 2011. In addition, in evaluating Plaintiff's social functioning for purposes of the Listing, the ALJ noted the testimony of Plaintiff's mother but also pointed to the medical evidence in the record, including the notes of the consultative examiner, Dr.

Lucas, and Plaintiff's treating psychiatrist, Dr. Collins, that Plaintiff was "pleasant and socially appropriate." (Tr. at 16.) Dr. Lucas specifically found that based on his evaluation, Plaintiff was "polite, interactive and pleasant," and that he had "an adequate ability at relating with others." (Tr. at 361.) The ALJ further noted that Plaintiff's condition, including episodes of anxiety, rage, or panic attacks, had improved and was controlled with medication, as discussed above. The evidence presented substantially supports the ALJ's finding that Plaintiff suffered only moderate limitations in social functioning. Therefore, the Court finds no error at step three of the sequential analysis.

B.     Hypothetical question

Finally, Plaintiff contends that the ALJ erroneously relied on the vocational expert's testimony at step five because the expert's testimony that Plaintiff could perform a substantial amount of jobs in the national economy was in response to an "incomplete hypothetical." (Pl.'s Br. at 8-9.) In making this challenge, Plaintiff argues that the hypothetical question in issue was flawed because it failed to reference Plaintiff's constant absences, late arrivals to work, and inability to interact appropriately with coworkers or supervisors. (Id.) The ALJ included these additional restrictions in subsequent questions to the vocational expert. "However, the ALJ chose not to rely on the . . . testimony that reflected those limitations." (Id. (citing Tr. at 22, 68).)

As Plaintiff correctly notes, "[t]o be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must be in response to a hypothetical question which fairly sets out all of the claimant's impairments." McPherson v. Astrue, 605 F. Supp. 2d 744, 780 (S.D. W. Va. 2009) (citing Walker v. Bowen, 889 F.2d 47,

51 (4th Cir.1989)). "Nevertheless, . . . the questions need only reflect those impairments that are supported by the record. McPherson, 605 F. Supp. 2d at 780 (citing Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987)). Accordingly, an ALJ is not obligated to structure hypothetical questions accounting for impairments he found to be not severe or not credible when assessing the claimant's RFC, McPherson, 605 F. Supp. 2d at 780, nor is he required to rely on testimony resulting from such questions.

Here, Plaintiff makes no direct challenge to the ALJ's RFC assessment, which included credibility findings and analysis of all medical and non-medical evidence in this case. Rather, Plaintiff's contention at step five merely raises his earlier objections to the ALJ's findings regarding the severity of Plaintiff's social and concentration difficulties, and also notes Plaintiff's prior absences due to panic attacks. However, as noted above, the ALJ found that the medical evidence reflected that Plaintiff's panic attacks were well controlled on medication. (Tr. at 20.) In addition, the ALJ's conclusions regarding the severity of Plaintiff's limitations in social functioning and concentration, persistence, and pace are supported by substantial evidence, as set out above. Because (1) substantial evidence supports these findings as set out in the ALJ's decision, and (2) the hypothetical question challenged by Plaintiff fairly set forth all limitations described in Plaintiff's RFC, the Court finds that the ALJ properly relied on the vocational expert's testimony.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Summary Judgment [Doc. #10] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #14] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 24th day of August, 2015.

/s/ Joi Elizabeth Peake
United States Magistrate Judge
